**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **RICHARD PARKER,** | : | |
| **Plaintiff** | : | |
| | : | **No. 20-cv-1773 (VLB)** |
| **v.** | : | |
| | : | |
| **ACE AMERICAN INS. CO.** | : | **December 2, 2021** |
| **d/b/a CHUBB** | : | |
| **Defendant** | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM OF DECISION**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DKT. 18**

This matter is an insurance coverage dispute arising from an automobile accident that injured Plaintiff Richard Parker ("Mr. Parker" or the "Plaintiff") while he was operating a vehicle on his employer's behalf. Mr. Parker seeks to recover underinsured motorist benefits under a commercial automobile insurance liability policy issued by ACE American Insurance Company ("ACE" or the "Defendant")) to his employer. [Dkt. 1-1 (Am. Compl.) ¶¶ 17-21]. ACE properly removed the suit to this Court from the Superior Court of the State of Connecticut, Judicial District of New Haven, pursuant to 28 U.S.C. §§ 1441 and 1446. [Dkt. 1 (Not. of Removal)].

At issue is whether Mr. Parker's employer, Ryder Systems, Inc. ("Ryder"), purchased uninsured/underinsured motorists coverage limits of $1,000,000 or the statutory minimum under Connecticut law ($25,000 per person/$50,000 per accident). Because there is no genuine dispute of material fact that Ryder intended to purchase the minimum available coverage limits under Connecticut law and Mr.

1

Parker recovered more than that sum from the tortfeasor's insurer, the Court grants ACE's motion for summary judgment and enters judgment for ACE.

## Preliminary Matters

As a preliminary matter, Plaintiff failed to comply with D. Conn. L. R. 56(a)(2), which requires that:

> (i) A party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled "Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment," which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56 (a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c) . . .

Instead, Plaintiff filed a Local Rule 56(a)(1) statement which was improper because Plaintiff is not moving for summary judgment. *See* [Dkt. 22-1 (Pl. Statement of Material Facts)]. ACE argues that the Court should deem Plaintiff's failure to respond as an admission of the material facts as set forth by ACE. [Dkt. 23 (Def. Repl. Br.) at 3-5]. Plaintiff then filed a pleading captioned, "Second Amended Statement of Material Facts in Dispute," which still fails to cure the deficiency ACE raised. *See* [Dkt. 25]. ACE then moved for permission to respond to Plaintiff's supplemental pleading. [Dkt. 26 (Def. Mot. to File Repl.)].

The Court denies ACE's request to deem its statement of material facts admitted and denies its request to respond to Plaintiff's supplemental pleading as unnecessary. As demonstrated by ACE's response to Plaintiff's "Local Rule 56(a)(1)" Statement, there is substantial agreement on the material facts for

purposes of Defendant's summary judgment motion. Whether these facts were deemed admitted or put to proof would not affect the outcome.

### Background

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties. The facts are read in the light most favorable to the non-movant, Mr. Parker. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). [1] For ease of reference, exhibits will refer to evidentiary exhibits included with the Defendant's Motion for Summary Judgment [Dkt. 18] and Plaintiff's Opposition [Dkt. 22] by exhibit only. i.e. [Def. Ex. 1] and [Pl. Ex. A]. Given the procedural error in Plaintiff's statement of material facts addressed above, the citation of Defendant's response to Plaintiff's supplemental pleading is applicable where the parties agree as to the fact stated. END FOOTNOTE

Mr. Parker, a Connecticut resident, was an employee of Ryder Truck Rental, LT. [Dkt. 24 (Def. Resp. to Pl. Stat. of Material Facts.) ¶ 1]. Mr. Parker is seeking underinsured motorist coverage under a commercial automobile liability insurance policy issued by ACE to Ryder for the October 1, 2019 to October 1, 2020 policy period (the "Policy"). [Def. Resp. to Pl. Stat. of Material Facts.) ¶ 2]; [Def Ex. 4 (Policy no. ISA-H25290112)].

---

[1] For ease of reference, exhibits will refer to evidentiary exhibits included with the Defendant's Motion for Summary Judgment [Dkt. 18] and Plaintiff's Opposition [Dkt. 22] by exhibit only. i.e. [Def. Ex. A] and [Pl. Ex. 1]. Given the procedural error in Plaintiff's statement of material facts addressed above, the citation of Defendant's response to plaintiff's supplemental pleading is applicable where the parties agree as to the fact stated.

On October 2, 2019, Plaintiff was operating a truck in Connecticut when the vehicle was struck by Moet Bacote. [Def. Resp. to Pl. Stat. of Material Facts. ¶¶ 3-5]. For purposes of the motion, ACE does not contest that Mr. Parker was acting within the scope of his employment at the time of the accident. [Def. Resp. to Pl. Stat. of Material Facts. ¶ 4]. Plaintiff was injured during the accident. [Def. Resp. to Pl. Stat. of Material Facts. ¶ 3]. For purposes of determining the applicable underinsured motorist coverage limit, the extent of Mr. Parker's injuries is not at issue. *See* [Dkt. 14 (Rule 26(f) Report) at 6, 10] (joint proposal for phased discovery and dispositive motion practice)]; [Dkt. 16 (Scheduling Order)].

In his Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff argues that $900,000 remains available in underinsured motorists' coverage under the Policy. [Dkt. 22 (Pl. Mem. in Opp'n) at 8]. Considering that Plaintiff alleges that Mr. Bacote's insurance policy is exhausted and Plaintiff's workers' compensation claim is on-going (rather than settled), the Court infers that Plaintiff recovered $100,000 from Mr. Bacote's insurer. *See* [Dkt. 1-1 (Compl.) ¶ 17] (exhaustion of tortfeasor's insurance) and [Dkt. 12 (Pl. Mot. to Remand) at 2](citing Plaintiff's open workers' compensation claim). At this juncture, the amount recovered is immaterial insofar as that it is more than the applicable underinsured motorist coverage limits, which, under Connecticut law, cannot be less than $25,000 per person/$50,000 per accident pursuant to Conn. Gen. Stat. §§ 14-112(a) and 38a-336(a)(1)(D).

Rosa Rodriguez, a Senior Risk Manager for Ryder, completed a questionnaire and coverage selection/rejection forms in different states for

4

uninsured motorist coverage, underinsured motorist coverage and personal injury protection coverage. [Def. Ex. 6 (Rodriquez Decl.) ¶¶ 1-4]. Ms. Rodriguez entered Ryder's coverage selections into the "Chubb Accelerator." [Rodriguez Decl. ¶ 5]. The Accelerator is Chubb's proprietary web-based tool to assist insureds in documenting their coverage selections and for e-signing state specific coverage selections/rejection forms. [Def. Ex. 5 (Icenogle Decl.) ¶¶ 5-7].

Ms. Rodriguez checked boxes on the Chubb Accelerator Questionnaire indicating that Ryder wished to reject uninsured and underinsured coverage if permitted by state law and carry the minimum amount of coverage when required by state law. *See* [Dkt. 28](re-filed copy of Exs. A to Defs. Ex. 5-6, Chubb Accelerator Questionnaire].

Initially, the responses to the Chubb Accelerator Questionnaire that were electronically filed as exhibits to Mr. Icenogle and Ms. Rodriguez's declarations were not visible to the Court. Defendant's courtesy copy of the exhibits, however, included the responses excerpted in its Memorandum of Law. The Court ordered ACE to re-file the questionnaire electronically in a format that permitted the Court to view the responses to the questions posed by the form. Plaintiff stipulated to the authenticity of the re-filed document. *See* [Dkts. 27-28].; *see also* [Def. Ex. 6 (Rodriguez Decl. ¶ 7]("The questionnaire reflects that Ryder rejected UM and UIM coverage where permitted by law. For states where rejection of bodily injury UM or UIM coverage is not permitted by law, Ryder intended to purchase the minimum amount of UM or UIM coverage.").

Michael Icenogle, ACE's Underwriting Manager responsible for the Ryder account, attested that he understood that Ryder intended to reject uninsured and underinsured motorist coverage were permissible by law and carry the minimum coverage amount, if required. [Def. Ex. 5 (Icenogle) ¶ 12].

After Ms. Rodriguez completed the Chubb Accelerator Questionnaire, the on-line tool incorrectly auto-populated coverage limits on the Connecticut Uninsured/Underinsured Motorists Coverage Selection Informed Consent Form. [Def. Ex. 6, Ex. B (09/23/2019 Form)]; [Pl. Ex. A](same) (hereinafter the "Connecticut Consent Form"). The form explains the various types of uninsured and underinsured coverages. [*Id*.]. The form explains that "You have the right to choose the amount of coverage. It can be as low as $25,000 per person and $50,000 per accident, or as high as twice your policy's bodily injury liability coverage limit. The amount of liability coverage you buy will govern the maximum amount of UM/UIM coverage you can buy." [*Id*. at 1]. The form states that the Policy's bodily injury liability limit is $1 million. [*Id*. at 2].

The following page of the Connecticut Consent Form, which states the available coverage limits, is internally inconsistent. [*Id*. at 3]. The form offers three optional coverage levels and corresponding premiums: Double BI Limit, BI Limit, and Minimum Limit. [*Id*.]. The "Minimum Limit" box is checked with a corresponding premium amount of $7,721. [*Id*.]. However, below this section there is a listing of "Other Options," with different potential limits. [*Id*.]. There, the box "Other" is filled in with $1 million listed and a corresponding premium of $7,721. The quoted premium in this section for the $1 million coverage limit is the same as

the "Minimum Limit," whereas $1 million in coverage (the "BI Limit") was quoted above at $12,185. Ms. Rodriguez electronically signed the disclosure form on September 23, 2019. [*Id.*]

After the issuance of the Policy and the accident, Ms. Rodriguez hand-signed a corrected disclosure form listing the split limits as $25,000/50,000, with the same corresponding premium listed as the "Minimum Limit." [Def. Ex. 6, Ex. C (12/03/2019 Form)]. Ryder paid the $7,721 in premium that was quoted for the "Minimum Limit" on both forms. [Def. Ex. 5, (Icenogle Decl.) ¶ 16]. Mr. Icenogle and Ms. Rodriguez both attest that the amended December 3, 2019 form does not modify the Policy, but rather reflects Ryder's intended coverage election at the Policy's inception. [Def. Ex. 6, (Icenogle Decl.) ¶¶ 15-16, 18]; [Def. Ex. (Rodriguez Decl.) ¶¶ 9-10].

## Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id*. (citing *Anderson*, 477 U.S. at 255; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that "although the court should review the record

as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); see *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at \*4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010). "Summary judgment cannot be defeated by the presentation ... of but a 'scintilla of evidence' supporting [a] claim." *Id.* at 726 (quoting *Anderson,* 477 U.S. at 251).

**Analysis**

ACE argues that the September 23, 2019 Connecticut Consent Form is ambiguous because it reflects that Ryder was electing $1 million in uninsured/underinsured motorist coverage at the premium for the statutory minimum policy limits. [Def. Mem. in Supp. at 15]. ACE further argues that the coverage listed on the form was an error caused by a software glitch and is contrary to Ryder's coverage election set forth in the Chubb Accelerator Questionnaire that Ms. Rodriguez completed. [*Id*.].

ACE argues that Connecticut law applies. [*Id*. at 16, n. 5]. It cites the Connecticut Appellate Court's decision in *Fiallo v. Allstate Insurance Co.*, 138 Conn. App. 325 (2012) to argue that the ambiguity in the September 23, 2019 Connecticut Consent Form should not be construed against the insurer because the ambiguity concerns which coverage the insured purchased, not the interpretation of the Policy's language. [*Id*. at 16-18]. ACE argues that the Court should consider extrinsic evidence to resolve which coverage limits Ryder purchased pursuant to *Fiallo*. [*Id*. at 15-18]. ACE argues that there is no dispute that the September 23, 2019 Connecticut Consent Form was the product of a computer error, which ran contrary to Ryder's expectations and was subsequently corrected. [*Id*. at 17-18].

In opposition, Plaintiff argues that the Policy unambiguously provides $1 million in underinsured motorists coverage based on the September 23, 2019 Connecticut Consent Form. [Pl. Mem. in Opp'n at 6-7]. Plaintiff argues that Ms.

Rodriguez affirmatively elected the higher coverage limits by filling it in on the form and then electronically signing the document. [*Id*.]. Plaintiff argues that Ryder's amended consent form demonstrates that the higher coverage limit applies because the correction would be superfluous if the minimum limits were intended. [*Id*. at 8-9]. Finally, Plaintiff argues that Ryder's status as a fleet leasing company favors coverage because it is a sophisticated insured and would understand the implications of its coverage decision. [*Id*. at 9-10] (citing *Frantz v. United States Leasing, Inc.*, 245 Conn. 727, 741-42 (1998)).

In reply, ACE argues that Plaintiff failed to address its argument regarding the application of extrinsic evidence. [Def. Repl. Br. at 3-5]. In particular, ACE argues that Plaintiff failed to address its argument that the error on the September 23, 2019 Connecticut Consent Form was cause by a computer error and contradicted by Ryder's prior responses to the questionnaire and by Ms. Rodriguez's subsequent declaration. [*Id*. at 8-9]. Finally, ACE argues that Ryder's status as a fleet leasing company is inapposite because Connecticut courts hold that strict adherence to the informed consent requirements is unnecessary because these entities are presumably aware of the relative costs and benefits of different coverages. [*Id*. at 9-10].

A. <u>Applicable law</u>

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1331(a) because complete diversity exists between the parties and the amount in

controversy exceeds $75,000. *See* [Dkt. 15 (Mem. of Decision Denying Pl. Mot. to Remand)].

Federal courts sitting in diversity apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941). Absent a choice of law provision in a contract, Connecticut courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 188. *Reichhold Chemicals, Inc. v. Hartford Accident & Indem. Co.*, 252 Conn. 774, 781 (2000) (a/k/a "*Reichhold II*").

In *Reichhold II*, the Connecticut Supreme Court recognized a rebuttable presumption in favor of applying the law of the  state "which the parties understood was to be the principal location of the insured risk." 252 Conn. at 782 (citing § 193 of the Restatement (Second)). That presumption may be overcome by a showing of "…*exceptional* circumstances where the interests of another state *substantially* outweigh the interests of the site state." *Id.* at 789 (emphasis added).

Here, ACE argues that Connecticut law applies. [Def. Mem. in Supp. at 16, n. 5]. Mr. Parker does not address the choice of law issue or argue that another state's law applies; instead, it argues for a competing application of Connecticut insurance law to the facts, tacitly conceding that Connecticut law applies. *See, e.g.* [Pl.

Mem. in Opp'n at 6-9]. The Court agrees that Connecticut law applies as the accident occurred in Connecticut and Mr. Parker is a Connecticut resident. Accordingly, the object of the Court's inquiry is to "… ascertain what the

[Connecticut] law is, not what it ought to be." *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941). To put a finer point on the matter, the Court is bound to follow state law as interpreted by its intermediate appellate courts unless the Court finds persuasive evidence that the highest state court, which has not ruled on the issue, would reach a different conclusion. *Pahuta v. Massey-Ferguson, Inc*., 170 F.3d 125, 134 (2d Cir. 1999).

The interpretation of an insurance contract is a question of law for the Court, *see Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins.* Co., 274 Conn. 457, 462-63 (2005), that "is to be interpreted by the same general rules that govern the construction of any written contract," *Zulick v. Patrons Mut. Ins. C*o., 287 Conn. 367, 372-73 (2008). A court must construe the insurance contract to effectuate "the intent of the parties, that is, what coverage the ... [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy " *Liberty Mutual Ins. Co. v. Lone Star Indus*., Inc., 290 Conn. 767, 795 (2009) (quoting *Allstate Ins. Co. v. Barron*, 269 Conn. 394, 406 (2004)). "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. The determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." *Travelers Cas. & Sur. Co. of Am. v. Netherlands Ins. Co.*, 312 Conn. 714, 740 (2014)(internal citations and quotations omitted)

Under Connecticut law, an automobile insurer is required to provide uninsured and underinsured motorist coverage in an amount equal to the coverage limits for bodily injury. Conn. Gen. Stat. § 38a-336(a)(1)(A). An insurer must also

make available the option to purchase uninsured and underinsured motorists coverage for up to twice the limits of the bodily injury coverage. Conn. Gen. Stat. § 38a-336(a)(1)(B). An insured may elect less uninsured or underinsured motorist coverage upon written request, provided that the insured signs an informed consent form and the reduced limits are not less than the statutory minimum limits set forth in Conn. Gen. Stat. § 14-112(a). Conn. Gen. Stat. § 38a-336(a)(1)(D).

Plaintiff argues that "this waiver clearly establishes that the named insured elected $1,000,000 in UIM coverage. Pursuant to Conn. Gen. Stat. § 38a-366(a)(2), the elected amount of UIM on this waiver will be the UIM policy limit. The named insured elected $1,000,000 in UIM on the consent waiver thus the UIM for the policy is $1,000,000." [Pl. Mem. in Opp'n at 6]. The Court disagrees.

Plaintiff's argument misstates how the informed consent requirement applies to uninsured and underinsured motorists' coverage, particularly as applied to commercial fleets. *See infra.* 15-16. Plaintiff's argument ignores the fact that the September 23, 2019 Connecticut Consent Form is internally inconsistent. The box indicating "Minimum Limit" is checked, as is the box for [Other], with $1,000,000 entered with a corresponding premium that is the same as the "Minimum Limit." [Pl. Ex. A]. It is inconceivable that both answers could be correct and intended by either party to the insurance contract. The Court concludes that the Informed Consent form is ambiguous insofar as it concerns the amount of coverage purchased.

In *Fiallo v. Allstate Ins. Co.*, 138 Conn. App. at 339-348, the Appellate Court held that the insurance policy's declarations page was ambiguous insofar as

13

determining whether standard uninsured/underinsured motorist or uninsured/underinsured motorist conversion coverage was purchased. The determination of which coverage was purchased was a matter of historical fact, rather than interpretation of language in the insurance policy. *Id.* at 339-42. Therefore, the canon of *contra proferentem* does not automatically apply. *Id.* ". . .[R]ather [it]warrants an inquiry into the circumstances of the purchase of the policy to determine which variety of uninsured/underinsured motorist coverage the plaintiff opted to purchase so that the intentions of the parties may be discovered and put into effect." *Id.*

Under *Fiallo*, the Court looks to extrinsic evidence to determine the amount of coverage that Ryder intended to purchase, which is an issue of historical fact. Here, Plaintiff does not cite any evidence to challenge Mr. Icenogle's attestation that the Connecticut Consent Form was automatically populated based on Ms. Rodriguez's responses to the Chubb Accelerator questionnaire. *See* [Def. Ex. 5 (Icenogle Decl.) ¶¶ 5-8].

The Chubb Accelerator Questionnaire, together with Mr. Icenogle and Ms. Rodriguez's declarations, make Ryder's choice clear- it elected to forgo uninsured and underinsured motorist coverage wherever permitted by law and carry the lowest possible limits wherever required by law. [Dkt. 28-1 (Exs. A to Decls. of Icenogle and Rodriguez)]). Ryder paid ACE a premium of $7,721, which was the amount quoted on the Connecticut Consent Form for the minimum required coverage limits; the premium for the "BI Limit" of $1 million was $4,464 in additional premium. Ms. Rodriguez's execution of a corrected Connecticut Consent

Form accurately reflected the parties' understanding of the coverage that Ryder requested and paid for at the Policy's inception. Based on the questionnaire and the premium paid, there is no genuine issue of material fact that the initial Connecticut Consent Form constitutes a mutual mistake or scrivener's error as neither party believed that they were binding uninsured and underinsured motorist coverage for $1 million.

The Court is unpersuaded by Mr. Parker's argument that Ryder's status as a large, and presumably sophisticated commercial fleet company suggests that Ryder intended to purchase full limits based solely on the September 23, 2019 Connecticut Consent Form

The Connecticut Supreme Court and Appellate Court have held that strict adherence to the informed consent requirements of § 38a–336(a)(2) is not required for the effectiveness of a reduction of uninsured and underinsured motorists coverage by an insured under a commercial fleet policy. *See, e.g. Kinsey*, 277 Conn. 398 (strict adherence to twelve point font requirement not required); *Frantz v. U.S. Fleet Leasing, Inc.*, 245 Conn. 727 (1998)(consent of all insureds covered under a commercial fleet policy is not required) *compare to Nationwide Mut. Ins. Co. v. Pasion*, 219 Conn. 764, 769(1991)(consent of all named insureds required when policy is issued to individual consumers); *McDonald v. National Union Fire Ins. Co. of Pittsburgh, PA*, 79 Conn.App. 800, 807 (2003) (reduction of uninsured and under insured motorist coverage for a large commercial entity was effective where the consent form failed to list the corresponding premium cost for each coverage).

The legislature intended the specific, cautionary language in Conn. Gen. Stat. § 38a-366(a)(2) to "…protect individual consumers of insurance and not corporations insured under commercial fleet policies…" who may elect to a reduced amount of uninsured and underinsured motorist coverage. *See Kinsey*, 277 Conn. at 407-11 (explaining the legislative history and intent of informed consent requirement). Based on the legal and economic realities, "…commercial fleet insurance gives rise to a significantly different set of expectations and considerations than does personal automobile insurance." *Frantz*, 245 Conn. at 741.

Apart from financial responsibility laws, a commercial fleet procures insurance to "…protect itself from exposure to liability and to safeguard the value of its vehicles." *Frantz*, 245 Conn. at 740. In other words, a commercial fleet company does not bear the direct financial risk that a third-party tortfeasor will lack sufficient insurance to compensate its injured employee. There is nothing about Ryder's status as a commercial fleet company that calls into question whether it made an informed decision to carry the minimum available uninsured and underinsured motorist's coverage limits.

Accordingly, the Court concludes that there is no genuine issue of material fact that Ryder and ACE intended to bind coverage for the statutory minimum coverage limits for uninsured and underinsured motorists permitted by law in Connecticut., which is $25,000 per person/$50,000 per accident. Gen. Stat. § 14-112(a); Conn. Gen. Stat. § 38a-336(a)(1)(D). Since Mr. Parker has recovered more

than this sum from the tortfeasor, he is not an underinsured motorist. Conn. Gen. Stat. § 38a–336 (d); *Frantz*, 245 Conn. at 742.

## Conclusion

For the above stated reasons, the Court GRANTS ACE's Motion for Summary Judgment. The Clerk is directed to enter judgment for ACE and close this case thereafter.

IT IS SO ORDERED

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: December 2, 2021

17